# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSHUA GILL,

        Plaintiff

    vs.

BEST BUY CO., INC.,

        Defendant                       **JURY TRIAL DEMANDED**

## COMPLAINT

AND NOW, comes the Plaintiff, JOSH GILL, by and through his attorney, John Newborg, Esquire, and files this Complaint against Defendant, BEST BUY CO., INC., and represents the following:

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is predicated upon *28 U.S.C. Section 1331 and 1343*, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law.

2.      In addition, this Court has jurisdiction over Plaintiff's claims pursuant to *Section 706 of the Civil Rights Act of 1964, as amended, 42 U.S.C.A §2000e-16* (c)

3.      This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to *28 U.S.C. Section 1367*.

4.      Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to *28 U.S.C. Section 1391(b),* wherein Plaintiff resides, Defendants regularly conduct business and all the wrongful conduct occurred in the Western District of Pennsylvania.

## ADMININSTRATIVE PREREQUISITES

5.    Plaintiff has complied with all the administrative prerequisites to file an action

under *Section 706 of Title VII of the Civil Rights Act of 1964,as amended, 42 U.S.C. Sec. 2000e-*

*5 and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§951-963* as follows:

   a.   On or about October 31st, 2013, Plaintiff timely filed a formal complaint with the
        Equal Employment Opportunity Commission (hereinafter referred to as EEOC),
        which was dually filed with the Pennsylvania Human Relations Commission
        (hereinafter referred to as PHRC);

   b.   On April 30, 2015 Plaintiff received a Right to Sue letter from the EEOC;

   c.   Plaintiff filed suit within 90 days of receipt of the Right to Sue letter;


## PARTIES

6.    Plaintiff, Josh Gill, an African American, is an adult male individual and citizen

of the United States who resides at 510 Parkway Street, Ambridge, Pennsylvania.

7.    Defendant, Best Buy Co., Inc. (hereinafter "Best Buy") is a corporation doing

business in the Commonwealth of Pennsylvania, with its headquarters and principal place of

business located 7601 Penn Avenue South, Richfield, MN 55423.

8.    Plaintiff was an employee of the Best Buy store located at 220 Golfview Drive,

Monaca, PA 15061, store number 684.

9.    At all relevant times, Defendant Best Buy employed in excess of fifteen (15)

employees and was an employer within the meaning of *Title VII of the Civil Rights Act of 1964,*

*as amended, 42 U.S.C. Sec. 2000e-2 et. seq. and the Pennsylvania Human Relations Act, 43 P.S.*

*§§954(b)*;

10.     At all times Best Buy acted through its authorized employees who were acting within the course and scope of their employment.

## FACTUAL ALLEGATIONS

11.     In October 2013 Defendant Best Buy posted online the availability of a fulltime position in Asset Protection for Defendant's Stone Quarry Store # 684 located in Monaca, Pennsylvania.

12.     The basic requirements for the Asset Protection position were for the candidate to have a high school diploma or equivalent and the preferred requirements were for the candidate to have an Associate Degree along with 3 months of experience in safety and/or security

13.     Plaintiff was well qualified for the Asset Protection position, as he has an extensive amount of experience in security and Plaintiff had an Associate's Degree in Specialized Business – Criminal Justice.

14.     Plaintiff was brought in for an interview in mid-October, 2012 and at that time Plaintiff was told that the Asset Protection position did not exist at that particular store, but his application would stay on file for approximately a one (1) years' time period if the position was created.

15.     Defendant then offered Plaintiff a seasonal position to work in the warehouse area of the store.

16.     Plaintiff accepted the offer and commenced work in the warehouse on November 9, 2012.

17.     In fact, the Asset Protection position did exist and Defendant Best Buy continued to search for a person of Caucasian decent to hire for the Asset Protection position.

18. On or about March 2, 2013, Defendant posted an opening for the position of Asset Protection in the Monaca, Pennsylvania store. (See attached Exhibit "A")

19. The reason given for Defendant Best Buy failing to hire Plaintiff for the fulltime Asset Protection position was a mere pretext for unlawful discrimination, in which Defendant Best Buy removed the position posting for a few months, and then hired a Caucasian male in July of 2013.

20. Instead of being awarded the fulltime position in which he applied for and was qualified for, the Plaintiff was hired as a seasonal worker, whose primary function was physical labor.

21. Furthermore, after hiring Plaintiff, Defendant Best Buy hired numerous Caucasian employees to work on the sales floor during the holiday season, without offering the Plaintiff a position on the sales floor, even though the Plaintiff had sales experience.

22. Plaintiff was the only African American working at the Monaca, Pennsylvania Best Buy Store.

23. After starting work as a seasonal employee in the warehouse, the Plaintiff was continuously treated differently than the other employees and harassed based upon his race in the following instances:

   a) On or about November 25, 2012 co-employee Schafer asked Plaintiff for his autograph and later in the day, he began reciting lines from the movie *"Snakes on a Plane"*, a movie in which African-American actor Samuel L. Jackson played a role;

   b) Plaintiff informed Schafer that the comments were unwelcomed;

c)      On or about November 27, 2012, Shafer continually referred to Plaintiff as "Shaft," another movie where an African-American played a role, when the two crossed paths;

d)      On this same day, comments were made over the two-radio's insinuating Plaintiff was *"Shaft"*;

e)      On or about November 23, 2012, managers Bennett, Douds, and coemployee Schlack made various remarks referring to Plaintiff as *Shaft* and Samuel L. Jackson's character from the movie *Snakes on a Plane*;

f)      On this day, Plaintiff spoke with manager Bennett and informed him of his disapproval of the various comparisons being made and being called names other than his given name;

g)      On or about November 29, 2013 manager Bennett stated to Plaintiff, "Hey Boy, get these TV's on the floor!"

h)      On or about December 2, 2012, coemployee Schafer made various comments to Plaintiff stating that he wished he could be as famous as Plaintiff implying Plaintiff was *"Shaft"* or the star of the movie *"Snakes on a Plane."*

i)      On or about December 6th, 2012, coemployees Schlack and Schaffer were conversing and began laughing upon looking at Plaintiff and one of the two stated, "we hear you have another hit coming out; can I have your autograph…" and then the pair again began laughing and walking out of the warehouse and into the "Flea Market" area;

j)      On or about December 13, 2012, coworker Schlack made a comment towards Plaintiff stating, "…Up at the crack of dawn like a good *boy*…";

k)      On this same day, Shafer made comments towards Plaintiff asking if he was excited about his world premiere;

l)      On or about December 24, 2012, coworker Schlack stated "…So tomorrow is your big day, huh?" and when Plaintiff asked what he was talking about, he found that his co-workers had been referring to the movie *'D'Jango'*.

m)      On or about January 5, 2013 Baskin and Bennett informed Plaintiff that he would be transferred to the Home Theatre Department in the store because his hours were being cut in the warehouse.

n)      On or about January 24, 2013, manager Baskin approached Plaintiff and an employee of Hispanic descent and stated that President Obama should be admired by minorities, and that you minorities "…should feel proud…"

o)      On or about January 29, 2013 Plaintiff, whose hours had been reduced to the point where he could not make a living at Best Buy, informed management that, unless he could get more hours, he would need to start looking for another job, and therefore would have to limit his availability to work for Best Buy to only the weekends;

p)      On or about January 30, 2013, Manager Baskin denied Plaintiff's request that he be allowed to work only on weekends, and further denied his request for more hours.

q)      On or about February 3, 2013, Plaintiff was moved from the Warehouse area of the store to the Home Theatre Department on the stores Sales Floor without first receiving any training on the computer systems and without receiving any education on the products in the Home Theatre Department;

r)      When Plaintiff requested the training and education from management, the request was denied;

s)      On or about February 3, 2013 manager Baskin again informed Plaintiff that his weekend availability request was denied, but this time assured Plaintiff that he would be given more hours, which assurances were never met;

t)      On or about February 17, 2013, Baskin assigned Plaintiff to the Front Desk/Customer Service Desk and when Plaintiff informed Baskin that he had received no training working the Front Desk, Baskin said "…just wing it…"

u)      Before Plaintiff's shift ended, Baskin took Plaintiff into the Admin Office, where Baskin criticized Plaintiff's work at the Customer Service Desk, claiming multiple customers complained about Plaintiff's performance;

v)      On or about February 24, 2013, after working for Best Buy for almost four months, Plaintiff finally received a Systems Guidebook, a Home Guidebook and a Store Induction booklet and Plaintiff was promised that he would be allotted "training time;"

w)       Instead of receiving training, Plaintiff instead he was placed on the sales floor and subjected to various distractions while attempting to learn his required "E-Learnings, " and Plaintiff was never taught how to correctly process credit card payments for the Best Buy Credit Card;

x)      On or about February 28, 2013, manager Baskin informed Plaintiff that it was company policy for him to wear a name-tag or he would have to be sent home and Plaintiff informed Baskin that he was never given a name tag, he was then instructed to go to the warehouse and see if there was one that could be made.

y)      After Plaintiff informed Baskin that he was told that a proper name tag could not be made at that time, Baskin placed a sales sticker on Plaintiff's chest while making humiliating statements towards Plaintiff regarding Plaintiff's lack of intelligence which humiliating statements continued throughout the rest of the day;

z)      On or about February 28, 2013, Plaintiff asked Baskin where a specific folder was and after showing Plaintiff where the folder was, Baskin insulted Plaintiff by stating that he lacked the intelligence to find the folder;

aa)     On or about March 2, 2013, Baskin informed Plaintiff that if he did not complete a specific amount of "E-Learnings" within a short period of time, Plaintiff would be taken off of the schedule.

bb)     At that time Plaintiff informed Baskin that he has not be allotted adequate hours to complete the "E-Learnings", nor was he receiving the same amount of time other employees had received to complete the "E-Learning."

cc)     Defendant Best Buy has a policy that states, "…Each employee is required to wear a name badge at all times. Name badges must have the employee's actual name – do not borrow another employee's name badge…"

dd)     On or about March 2, 2013, Plaintiff requested a formal name badge from Baskin as he had been wearing a  sales sticker instead of a badge  like all other employees.

ee)     On or about March 2, 2013, Baskin provided Plaintiff with a proper employee name badge and as Baskin was handing Plaintiff the name badge, manager Stickley told Plaintiff to "…make sure you earn that badge…";

ff) On or about March 9, 2013 Plaintiff was written up for leaving out bubble wrap in the "Flea Market" area of the store, while completing a sales transaction.

gg) On or about the above mentioned date, Plaintiff expressed his concern to manager Bennett that he was being written up for leaving out bubble wrap, yet his Caucasian co-workers were not being written up for leaving out valuable items in the "PRC tote".

hh) In addition, Plaintiff expressed his concern that he was the only person being written up for leaving items in the "Flea Market" area of the store, yet when he was the employee cleaning the "Flea Market" area of the store, his Caucasian co-workers were not written-up for leaving items Plaintiff had to clean up in the "Flea Market" area of the store.

ii) Defendant Bennett informed Plaintiff that the issues were separate issues and incidents and were not compareable;

jj) On or about March 9, 2013, Plaintiff spoke with manager Douds over being written up by manager Bennett, about not being properly trained, and about the overall harassment he was being subjected to, and about being treated differently than his coworkers.

kk) Manager Douds assured Plaintiff would speak to manager Bennett about Plaintiff's concerns, however, with respect to the Douds went onto inform Plaintiff that he would do nothing about the harassment as the co-employees were merely having fun with him and were not harassing him.

ll) On or about March 11, 2013, Plaintiff contacted Best Buy Human Resources Department and filed a discrimination and harassment complaint, creating

Claim # 1-115778895, 1) stating management and his co-workers had and continued to direct numerous racial toward Plaintiff, that 2) that his hours had been cut, while no-one else's hours were being cut, that 3) being directed to perform more physical labor than his co-employees; 4) being adequately trained; and 5) for not being hired for the position to which he applied;

mm)     On or about March 17, 2013, Plaintiff was removed from the Sales Floor and returned to work inside the Warehouse;

nn)     Management informed Plaintiff he was being moved to the Warehouse to acquire more hours, however, Plaintiff only working on the days that required physical labor;

oo)     In March 2013 Plaintiff  Plaintiff was allotted 4-6 hour shifts to unload trucks by himself, while Caucasian workers were scheduled to work 6-8 hour shifts with a helper working with them when unloading trucks;

pp)     Furthermore, Plaintiff was subjected to unloading unstable pallets that were over six (6) feet in height and unsafely stacked and Plaintiff expressed concern to management regarding his safety, and although manager Bennet represented she would t ry to rectify the unsafe conditions with Best Buy Distribution, nothing changed;

qq)     On or about April 18, 2013, manager Cline approached Plaintiff stating "…I've had    it with these mother**ck*ng snakes on the plane…"

rr)     On that same day, Cline and Bennett while walking past Plaintiff, Bennett said    "…Can you spell it…" Cline answered "…DJANGO, the D is silent…";

ss)     At that time Plaintiff informed the above mentioned employees that their comments were inappropriate and unwelcome;

tt)     On or about May 9, 2013, Plaintiff contacted the Best Buy's Distribution Center about the unsafe conditions while unloading the trucks that carried pallets that were unstable and falling over while being taken off of the truck and with heavier items being stacked approximately eight (8) to ten (10) feet in the air.

uu)     Plaintiff was then informed that it was the duty of manager Baskin to call and request a change in truck loading procedures to change, learning that manager Baskin had not called as she had previously promised;

vv)     Plaintiff informed management that they would need to call Best Buy's Distribution Center to request a change in the loading procedures, but no member of management ever called the Distribution Center

ww)    On or about May 16, 2013, when Plaintiff arrived a little late for work, manager Schlack stated, "Late again, I see…" After this was said, manager Bennett stated, "You can't always run on, what do yinz call it… CP time," and both managers laughed.

xx)     On this same date, manager Cline approached Plaintiff numerous times throughout the day insisting that Plaintiff recite lines from *Snakes on a Plane*;

yy)     On this above mentioned dated, manager Douds continually referred to Plaintiff as "Samuel L. Jackson", "Sammy", "Samuel L;"

zz)     On or about May 19, 2013, Plaintiff again filed Claim # 1-117121345 with Best Buy's Human Resources Department alleging discrimination, retaliation, and a hostile working environment;

aaa)    On or about May 23, 2013, Schlack and Bennett were sitting at the Warehouse desk in the Warehouse area of the store. Schlack asked Plaintiff, "How do you get the truck done so quickly?" Before Plaintiff could answer the question, Bennett stated, "Because that's 'D'Jango'" and the pair began laughing;

bbb)    On or about June 1, 2013, Baskin reprimanded Plaintiff for attendance violations ranging from March 19, 2013 to May 23, 2013;

ccc)    On or about the above mentioned date, Plaintiff avers he was informed of being disciplined for attendance violations that occurred 6 months earlier in December of 2012, when nothing had been mentioned at the time.

ddd)    On June 1, 2013, Plaintiff was informed he was being written up for an attendance violation that occurred on January 13, 2013 and for an attendance violation that occurred on February 16, 2013;

eee)    No Caucasian employee were ever reprimanded months after an alleged infraction, but received the reprimand at the time of the alleged infraction;

fff)    On or about June 2, 2013, co-employee Doyle approached Plaintiff and stated, "You do not look like a Josh or a Joshua…No…Samuel, a little, D'Jango, just a little…" When Plaintiff asked Doyle who he looked like now, Doyle stated "…Hmmm… you look like a… Gus! That's what I'll call you, Gus…" When Plaintiff inquired who "Gus" was, Doyle walked away while laughing;

ggg)    On the above mentioned date, managers Baskin and Stickley reprimanded Plaintiff for attendance violations on June 1 and 2, 2013 and placed the Plaintiff on "Final Warning;"

hhh)    On or about June 21, 2013, Plaintiff asked Baskin why he was still not receiving the same hours as the Caucasian employees, and at that time Baskin informed Plaintiff that she could not speak with Plaintiff about the matter, due to Best Buy's Human Resource Department's ongoing investigation of Plaintiff's claim of discrimination;

iii.)    On or about July 14, 2013, Plaintiff asked Baskin for his disciplinary report which manager Baskin failed to provide;

jjj)     At that time, manager Baskin told Plaintiff to write out in long hand his work availability even though the Plaintiff had already posted his work availability on-line as every other employee does and no Caucasian employee was ever presented with the same demand:

kkk)    On or about July 20, 2013, managers Baskin and Stickley informed Plaintiff that if he did not open his work availability to work Thursday's and Friday's to unload the truck, he would be terminated.

lll)     Manager Baskin told the Plaintiff that she had the approval of Human Resources and manager Hanley to take this action;

mmm) On or about July 22, 2013 Plaintiff spoke with the Best Buy's Human Resources Department complaining of discrimination, harassment, retaliation, and a hostile working environment.

nnn)    On the above mentioned date, Plaintiff also contacted manager Hanley explaining the current situation and manager Hanley informed Plaintiff that he would speak with manager Baskin about the issues and get back to Plaintiff;

ooo)    On or about July 26 2013, Human Resources referred Plaintiff to a representative of Best Buy Corporate who referred Plaintiff to Best Buy's Open and Honest Line.

ppp)    On the above mentioned date, Plaintiff contacted Best Buy's Open and Honest Line and explained the situation at hand, creating Report Key# 9482283802;

qqq)    On or about July 29 2013, Plaintiff again contacted manager Hanley stating his concerns and manager Hanley informed Plaintiff that he would further look into the situation and would try to find a way to resolve the issues and Hanley informed the Plaintiff that if he could not rectify the matter, Hanley would refer the matter to the "higher-up's" in Best Buy Corporate Department;

rrr)    On or about July 29, 2013, Plaintiff emailed to manager Hanley a copy of the Plaintiff's disciplinary report, and also emailed to manager Hanley copies of emails from store management to all store employees referencing infractions of other employees and reminding the employees not to commit similar infractions, but were infractions equal to or worse than Plaintiff's alleged infractions, but, unlike Plaintiff, no discipline was meted out;

sss)    On or about July 30th, 2013, Plaintiff was informed that Report Key# 9482283802 was transferred to Best Buy Human Resources and given Service Request Claim Number 1-120953620;

ttt)    On or about August 5, 2013, Plaintiff spoke with manager Hanley about Plaintiff's availability and ability to work on August 9, 2013 and requested an accommodation for that day which request was denied;

uuu)    Meanwhile, Caucasian employees would receive numerous accommodations of their schedules to meet their requests:

vvv)    At the same time, Plaintiff informed manager Hanley that his hours were being cut after being promised more hours;

www)  Hanley informed Plaintiff  that he would speak to manager Baskin and get back to Plaintiff, yet failed to do so;

xxx)    On or about August 15, 2013, managers Baskin and Cline reprimanded Plaintiff for coming into work late on August 9, 2013;

yyy)    On or about August 15, 2013, Plaintiff was also reprimanded for not putting away all the totes left behind from the truck received on or about August 8, 2013, even though the totes should have been put away by other employees before Plaintiff began his shift and even though on August 8, 2013 Plaintiff was completing his required "E-Learnings;"

zzz)    Baskin requested Plaintiff to pull up his "E-Learnings" to prove he was working on them and Plaintiff stated that the "E-Learnings" were available to any manager on-line, and when Plaintiff said this he was written up for refusing to log into his "E-Learning;"

aaaa)   Upon being reprimanded for not putting away all the totes, Plaintiff informed managers Baskin and Cline that he had put away totes after he completed his "E-Learnings" but to put away all of the totes would have required that he stay after closing, when no other Caucasian employee had ever been required to work after closing to put away totes;

24.     On August 29, 2013 Plaintiff resigned and presented a "Letter of Resignation" to manager Cline, which letter cited discrimination, retaliation, and lack of concern for his safety as the basis for his resignation. (See Exhibit "B")

25.     Plaintiff was constructively discharged on August 29, 2013.


## CAUSES OF ACTION

### I.     DISPARATE TREATMENT

26.     Paragraphs 1 through 25 above, including all subparts, are hereby incorporated by reference.

27.     Plaintiff was denied the full-time position of Asset Manager as a result of Best Buy following a policy of unlawful discriminatory hiring practices between Caucasian and African-American employees.

28.     Plaintiff was relegated for the most part to performing physical labor in the warehouse as opposed to other less physically demanding position as a result of Best Buy following a policy of unlawful discrimination between Caucasian and African-American employees.

29.     Plaintiff received less training and education in company procedures and practices than similarly situated Caucasian employees as a result of Best Buy following a policy of unlawful discrimination between Caucasian and African-American employees

30.     Plaintiff received fewer hours than similarly situated Caucasian employees as a result of Best Buy following a policy of unlawful discrimination between Caucasian and African-American employees.

31.     Plaintiff received disparate discipline compared to similarly situated Caucasian employees as a result of Best Buy following a policy of unlawful discrimination between Caucasian and African-American employees.

32.     Plaintiff received less accommodation of his schedule than similarly situated Caucasian employees, as a result of Best Buy following a policy of unlawful discrimination between Caucasian and African-American employees.

33.     Defendants' discriminated against the Plaintiff with malice and/or with reckless indifference to Plaintiff's federally protected rights.

34.     Defendant's discriminatory conduct violated Title VII of the Civil Rights Act of 1964 (42 U.S.C.§ 2000-e et seq.) and the Civil Rights Act of 1866 (42 U.S.C. §1981a)

WHEREFORE, Plaintiff prays for the following relief:

A.      Judgment in his favor and against Best Buy for back pay and past loss of employment benefits from November 9, 2012 to the date of verdict for the wrongful refusal to hire Plaintiff for the Asset Protection job and for front pay and benefits from the date of verdict into the future

B.      Alternatively, judgment in his favor and against Best Buy for back pay and past loss of employment benefits from August 29, 2013 the date of the Plaintiff's Constructive Termination to the date of verdict and for front pay and benefits from the date of verdict into the future.

C       An award of compensatory damages in an amount to be determined at trial.

D.      An award of reasonable attorney's fees, including litigation expenses and costs.

E.      An award for embarrassment and humiliation.

F.      An award of punitive damages

G.      Such other relief as the Court deems just and proper.

## II.    HARRASMENT

35.    Paragraphs 1 through 25 above, including all subparts, are hereby incorporated by reference.

36.    While employed by Defendant Best Buy Plaintiff was subjected to pervasive racially motivated harassment as stated above.

37.    Plaintiff made requests to management, Human Resources and utilized Best Buy's internal grievance procedures to get the harassment to stop, but to no avail.

38.    Defendants' harassed the Plaintiff with malice and/or with reckless indifference to Plaintiff's federally protected rights.

39.    As a result of the harassment, Plaintiff was constructively discharged on August 29, 2015 and suffered wage loss.

40.    As a result of the harassment the Plaintiff suffered emotional distress.

41.    As a result of the harassment, Plaintiff suffered both economic and non-economic damages as enumerated below.

42.    Defendant's discriminatory conduct violated Title VII of the Civil Rights Act of 1964 (42 U.S.C.§ 2000-e et seq.) and the Civil Rights Act of 1866 (42 U.S.C. §1981a)

WHEREFORE, Plaintiff prays for the following relief:

A.    Judgment in his favor and against Best Buy for back pay and past loss of employment benefits from August 29, 2013 the date of the Plaintiff's Constructive Termination to the date of verdict and for front pay and benefits from the date of verdict into the future.

B.    An award of compensatory damages in an amount to be determined at trial.

C.    An award of reasonable attorney's fees, including litigation expenses and costs.

D.    An award for embarrassment and humiliation.

E.     An award of punitive damages

F.     Such other relief as the Court deems just and proper.


## III.     RETALIATION

43.     Paragraphs 1 through 25 above, including all subparts, are hereby incorporated by reference.

44.     After making multiple complaints to Best Buy's local management and to Best Buy's Human Resources Department and utilizing Best Buy's internal grievance procedures, Plaintiff was written up for being late for various instances that were at no time discussed with Plaintiff when they allegedly occurred as retaliation for making said complaints and for utilizing the grievance procedure.

45.     After making multiple complaints to Best Buy's local management and to Best Buy's Human Resources Department and utilizing Best Buy's internal grievance procedures Plaintiff was subjected to various unreasonable relocations inside Defendant Best Buy Store #684 without proper or adequate training as retaliation for making said complaints and for utilizing the grievance procedure.

46.     After presenting and filing numerous complaints with Defendant Best Buy Co.'s Human Resources Department, managers Baskin and Stickley informed Plaintiff that he was hired solely to work unloading trucks in the warehouse as retaliation for making said complaints and for utilizing the grievance procedure.

47.     After making multiple complaints to Best Buy's local management and to Best Buy's Human Resources Department and utilizing Best Buy's internal grievance procedures Plaintiff's hours were reduced as retaliation for making said complaints and for utilizing the grievance procedure.

48.     Pleading in the alternative, the retaliatory conduct led to Plaintiff's constructive discharge, which caused wage loss.

49.     As a result of the retaliation the Plaintiff suffered emotional distress.

50.     As a result of the retaliation, Plaintiff suffered both economic and non-economic damages as enumerated below.

51.     Defendant's retaliatory conduct violated Title VII of the Civil Rights Act of 1964 (42 U.S.C.§ 2000-e et seq.)

WHEREFORE, Plaintiff prays for the following relief:

A.      Judgment in his favor and against Best Buy for back pay and past loss of employment benefits from August 29, 2013, the date of the Plaintiff's constructive termination to the date of verdict and for front pay and benefits from the date of verdict into the future.

B.      An award of compensatory damages in an amount to be determined at trial.

C.      An award of reasonable attorney's fees, including litigation expenses and costs.

D.      An award for embarrassment and humiliation.

E.      An award of punitive damages

F.      Such other relief as the Court deems just and proper.

## COUNT III-PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")

52.     Plaintiff incorporates by reference the allegations set forth above in Paragraphs 1 through 25, inclusive, as if more fully set forth herein.

53.     At all times material hereto, Plaintiff has been an "employee" within the meaning of the PHRA, 43 P.S. §954(c).

54.     At all times material hereto, Defendant has been an "employer" within the meaning of the PHRA, 43 P.S. §954(b).

55.     By virtue of Defendant's actions, as more fully set forth above, Defendant has discriminated against Plaintiff because of his race in violation of the PHRA, 43 P.S. §955(a).

56.     As a result of said violation of the PHRA by Defendant, Plaintiff has suffered, and will continue to suffer damages for which recovery is allowed under the PHRA, 43 P.S. §962(c).

WHEREFORE, Plaintiff prays for the following relief:

A.      Judgment in his favor and against Best Buy for back pay and past loss of employment benefits from August 29, 2013, the date of the Plaintiff's constructive termination to the date of verdict and for front pay and benefits from the date of verdict into the future.

B       An award of compensatory damages in an amount to be determined at trial.

C.      An award of reasonable attorney's fees, including litigation expenses and costs.

D.      An award for embarrassment and humiliation.

E.      An award of punitive damages

F.      Such other relief as the Court deems just and proper.

Respectfully submitted,

By:    s/John Newborg_____

        John Newborg, Esq.
        Pa. I.D. No. 22276
        225 Ross Street, 4th Floor
        Pittsburgh, PA 15219
        (412) 281-1106
        newborglaw@gmail.com